**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID LAWRENCE GATEWOOD,

        Plaintiff,

vs.                                                  Case No. 3:06-cv-41-J-32HTS

ATLANTIC SOUNDING CO., INC.,
and WEEKS MARINE, INC., a/k/a
Weeks de Puerto Rico, Inc.,

        Defendants.

## ORDER[1]

This admiralty case is before the Court on Defendants Atlantic Sounding Co., Inc.'s And Weeks Marine, Inc.'s Motion For Summary Judgment. (Doc. 38). Plaintiff has responded to the motion (Doc. 42-2), and the parties have each submitted supporting documents. (Docs. 25, 38-2, 42-2.)

**I.    BACKGROUND**

Plaintiff David Lawrence Gatewood ("Gatewood"), a seaman engineer, was injured on August 25, 2005, while a member of the crew working aboard the Motor Tug Trevor ("the TREVOR"), which was engaged in a dredging operation off the coast

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

of Puerto Rico.  Gatewood alleges that contrary to protocol, which required dredging operations to be discontinued whenever incoming seas reached 2-4 feet in height, the TREVOR continued to work even after the seas had reached a height of 8-10 feet. Though trained and experienced in handling duties in the engine room, Gatewood was assigned to handle mooring lines, which had begun to break in the high seas. In the course of that assignment, Gatewood was directed to throw the bow strap off. "As he did so, a swell hit the boat catching [Gatewood's] left hand between the line and the bit, injuring his hand and resulting in the partial amputation of the 4th finger." (Doc. 1 ¶ 7.)  Gatewood states his hand was crushed.  (Doc. 42-2 ¶¶ 26, 27.)

On January 17, 2006, Gatewood filed a two-count complaint, naming as defendants Atlantic Sounding Co., Inc., ("Atlantic Sounding") and Weeks Marine, Inc., ("Weeks Marine") a/k/a Weeks de Puerto Rico, Inc.  Count I is a claim for negligence, brought pursuant to the Jones Act.  46 U.S.C. app. § 688.[2]  Count II is a claim for breach of the warranty of seaworthiness, alleging that Gatewood's injuries are a result of and caused directly by the unseaworthiness of the vessel and its equipment.  (Doc. 1 ¶¶ 6-12.)  Gatewood seeks compensatory damages.

On July 14, 2006, Weeks de Puerto, Inc. ("Weeks de Puerto Rico") filed a Complaint For Exoneration From Or Limitation Of Liability concerning the August 25,

---

[2]  The provision 46 U.S.C. app. § 688 was repealed and re-codified by Congress on October 6, 2006.  Pub. L. No. 109-304, § 6(c), Oct. 6, 2006, 120 Stat. 1510.  It is now codified as amended at 46 U.S.C. §§ 30104 and 30105.

2005 accident, in the District Court for the District of Puerto Rico. (Doc. 25-4.) Weeks de Puerto Rico alleged that "[a]t all times material to this action, Weeks de Puerto Rico was and is the bareboat charterer of (and in sole possession of) the Tug TREVOR, (her engines, boiler, tackle, apparel, appurtenances, and furniture) and manned, victualed, and navigated said vessel, and was the owner thereof within the meaning of 46 U.S.C. §§ app. 185-186.[3]" In re Weeks de Puerto Rico, Inc., No. 06-1699 (RLA) (D. P.R.). (Doc. 25-4 ¶ 4; see also id. ¶ 25 ("Weeks de Puerto Rico, as owner of the Tug TREVOR on 25 August 2005, claims exoneration from or limitation of liability")).  Pursuant to Rule F of the Federal Rules of Civil Procedure Supplemental Rules for Admiralty, the District Court for Puerto Rico ordered the stay of all other actions arising out of the alleged August 25, 2005 incident, and issued notice to potential claimants  which included the sending of written notice to Gatewood's attorney. (Docs. 25-5, 38-2.)[4]

---

[3]   The Limitation of Vessel Owner's Liability Act, 46 U.S.C. app. § 181 et seq. was repealed by Congress in Pub. L 109-304, § 19, on October 6, 2006, 120 Stat. 1710. It was replaced by the Exoneration and Limitation of Liability Act, now found at 46 U.S.C. §§ 30501-30512, which re-codifies and re-writes the provisions. Section 19 of Public Law 109-304 provides that the provisions "are repealed, except with respect to rights and duties that matured, penalties that were incurred, or proceedings that were begun before the date of the enactment of this Act . . . ."

[4]   On October 10, 2006, defendants filed a motion with this Court for clarification concerning the Puerto Rico District Court's Order to stay claims. (Doc. 25.) In that motion, defendants asserted that at all times relevant to this lawsuit, Weeks Marine was not the owner of the TREVOR for purposes of application of general maritime law, but that Weeks de Puerto Rico, as the bareboat charterer, was the "owner," and

On December 5, 2006, the Honorable Raymond L. Acosta, United States District Judge for the District of Puerto Rico, entered a Default Judgment which states that: "Plaintiff WEEKS DE PUERTO RICO, INC., as owner of the M/V WEEKS 448 A/K/A Tug TREVOR" filed a Complaint for exoneration and limitation, counsel for Gatewood was notified of the complaint, and "[n]o claim was filed on or before October 23, 2006, the time prescribed for the filing of claims." The Court ordered and adjudged that no claim having been filed, "default judgment against all persons is hereby ENTERED." In re Weeks de Puerto Rico, Inc., No. 06-1699 (RLA) (D. P.R. Dec. 5, 2006). (Doc. 33-2.)

In their motion for summary judgment, defendants contend that the default judgment entered in the Puerto Rico limitation action "precludes Mr. Gatewood (and the rest of the world) from (a) attempting to dispute that the ownership of the TUG TREVOR and Mr. Gatewood's employer on 25 August 2005 was Weeks de Puerto Rico and (b) bringing any claim against any entity, including Atlantic Sounding, Weeks Marine, and Weeks de Puerto Rico based on the 25 August 2005 Tug TREVOR Accident." (Doc. 38 at 8-9.) Defendants argue that the default judgment "clearly set forth" and determined that: Weeks de Puerto Rico was the owner *pro hac vice* of the

---

that Gatewood was employed by Weeks de Puerto Rico at times relevant, as evidenced by Gatewood's paycheck issued by Weeks de Puerto Rico for the pay period covering the August 25, 2005 accident date. (Id. ¶¶ 4, 7.) On October 11, 2006, the Court entered an Order temporarily staying the case, holding pending motions in abeyance. (Doc. 26.)

TREVOR, and that Gatewood's Jones Act employer was Weeks de Puerto Rico. (Id. at 15-16.) Thus, according to defendants, under the policies and purpose of the Limitations Act, as well as the doctrines of res judicata and collateral estoppel, Atlantic Sounding and Weeks Marine are entitled to summary judgment. (Id. at 9.)

In support of its motion, defendants cite to the pleadings and default judgment entered in the limitation of liability action in the District Court of Puerto Rico (Docs. 25-2-25-5, 33-2), and a copy of a pay check to Gatewood, dated September 1, 2005, written by Weeks de Puerto Rico, with a New Jersey address. (Doc. 25-3.)

In response, Gatewood "acknowledges that he is barred from filing a claim against Weeks de Puerto Rico by virtue of the default." (Doc. 42 at 3.) He argues that he is not barred from pursuing claims against defendants Weeks Marine and Atlantic Sounding because they were not parties in the Puerto Rico limitation action.

Gatewood submits his affidavit in opposition to defendants' motion.[5] In it, he states that he was hired by and remained the employee of Weeks Marine and/or Atlantic Sounding throughout the relevant period, which he states is supported by correspondence (not provided to the Court) and communications to him from Weeks Marine as his employer, even after arriving in Puerto Rico on June 1, 2005 for the

---

[5] There is a technical defect in the affidavit, submitted under 28 U.S.C. § 1746, but the Court does not deem it material. While the Court also would have preferred to have had copies of the letters referenced in the affidavit attached, the Court does not find that omission to be material, assuming that they will be produced in the course of the litigation.

dredging job. (Doc. 42-2 ¶¶ 1, 2, 6, 7, 8, 11, 21, 22, 25, 29, 30, 31, 33, 34, 39, 40.) He states that he received correspondence in July from Atlantic Sounding concerning direct deposit of his paycheck, and his resignation in October. (Id. ¶¶ 24, 41.) He states that he was never told, nor did he ever consent, to being an employee of or "borrowed servant" to Weeks de Puerto Rico. (Id. ¶3.) Further, he saw no evidence that Weeks de Puerto Rico ever supplied its own crew for the TREVOR pursuant to any bareboat charter agreement. (Id. ¶ 17.) Gatewood states that he did not file a claim against Weeks de Puerto Rico in the Puerto Rico limitation action because he did not consider himself to be an employee of that company. (Id. ¶ 4.)

## II.   **LEGAL STANDARDS**

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine, material factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146,

1149 (11th Cir. 2005); see also American Dredging Co. v. Lambert, 81 F.3d 127, 129 (11th Cir. 1996)(in admiralty, as in all civil cases, the Court considers the evidence in the light most favorable to the nonmoving party).

## III.   DISCUSSION

### A.   Limitation of Liability Act

When faced with liability for a maritime accident, a vessel owner may file a petition in federal court seeking protection under the Limitation of Vessel Owner's Liability Act. Tug Allie-B, Inc. v. United States, 273 F.3d 936, 939 (11th Cir. 2001). The Limitation of Liability Act of 1851, 46 U.S.C. app. § 181 et seq., provides that the liability of a shipowner for damages arising from a maritime accident which occurs "without the privity or knowledge of the owner" shall not exceed the value of the vessel and its freight. 46 U.S.C. app. § 183(a); see also Tug Allie-B, Inc., 273 F.3d at 944.   The Act establishes a procedure by which a shipowner may, within six months after receiving written notice of a claim, file a petition in federal court. 46 U.S.C. app. § 185. Then, "all claims and proceedings *against the owner* with respect to the matter in question shall cease." Id. (emphasis added). A bareboat charterer may be deemed an owner *pro hac vice* and seek protection under the Act. See id. § 186. The court may enjoin the prosecution of other actions and direct all persons with claims to file them in the federal court, establishing a single forum for determining whether the vessel owner is liable, and, if so, whether the owner may limit its liability.

Maryland Cas. Co. v. Cushing, 347 U.S. 409, 417 (1954); Mediterranean Shipping Co. S.A. Geneva v. POL Atlantic, 229 F.3d 397, 402 (2d Cir. 2000); 46 U.S.C. a pp. § 185; Fed. R. Civ. P. Supp. Rule F.

"The purpose of a limitation proceeding is not merely to limit liability but to bring *all* claims into concourse and settle *every* dispute in *one* action." In re Complaint For Exoneration From or Limitation of Liability of Shell Oil Co., 780 F. Supp. 1086, 1089-90 (E.D. La. 1991)(quoting The Quarrington Court, 102 F.2d 916, 918 (2d Cir. 1939)).

### B.    Count I: Jones Act Negligence

The Jones Act, 46 U.S.C. app. § 688, confers upon a seaman the right to sue his employer for negligence resulting in his personal injury.  Although recovery may be had in admiralty for negligence resulting in the injury of a person who is not an employee, the Jones Act provides the only negligence remedy for an employee against his employer. Baker v. Raymond Int'l, Inc., 656 F.2d 173, 177 (5th Cir. 1981). A Jones Act claim requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection.  The employer need not be the owner or operator of the vessel. Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 452 (5th Cir. 1980). "[E]ven if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes." Guidry, 614 F.2d at 452.  A seaman may have more than one Jones

Act employer.  Id.; Ghio v. Jambon, 23 F. Supp.2d 724, 729 (S.D. Tex. 1998).

The existence of an employer-employee relationship is a question of fact; the critical inquiry turns on the degree of control exercised over the crewmen.  Factors indicating control over the seamen include payment and method of payment, direction, and supervision.  Also relevant is the source of power to hire and fire, and the parties' understanding of the relationship.  Matute v. Lloyd Bermuda Lines, Ltd., 931 F.2d 231, 236 (3d Cir. 1991); Wheatley v. Gladden, 660 F.2d 1024, 1026 (4th Cir. 1981); see also Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 795 (1949)(to determine employment under the Jones Act, one must look at the venture as a whole and the actual conduct of the parties including whose orders controlled the master and crew, who hired the crew, who paid the crew's wages, who chose the route).

The Puerto Rico default judgment does not bar Gatewood's Jones Act claim against his alleged employers Weeks Marine and Atlantic Sounding.  First, inasmuch as Weeks Marine and Atlantic Sounding were not parties to the Puerto Rico exoneration and limitation action, their alleged status as Gatewood's employer was never at issue, much less litigated and determined.

Second, Gatewood is not collaterally estopped[6] by the default judgment from

---

[6] Gatewood's claims of Jones Act negligence and unseaworthiness are based upon different causes of action than the exoneration and limitation of liability cause that was brought before the District Court in Puerto Rico, making the collateral estoppel (rather than res judicata) analysis applicable here.  See Brister v. A.W.I., Inc., 946 F.2d 350 (5th Cir. 1991)); Oldham v. Pritchett, 599 F.2d 274, 276 (8th Cir.

bringing this negligence claim against alleged employers Weeks Marine and Atlantic Soundings.  Arizona v. California, 530 U.S. 392, 414 (2000).  Because issue preclusion attaches only "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment,'" collateral estoppel does not apply "'[i]n the case of a judgment entered by confession, consent, or default, [because] none of the issues is actually litigated.'" Arizona v. California, 530 U.S. at 414 (quoting Restatement (Second) of Judgments § 27, p. 250 (1982)); see also Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1323 (11th Cir. 1995)(the general federal rule is that "[o]rdinarily a default judgment will not support the application of collateral estoppel" because none of the issues is actually litigated); compare Oldham v. Pritchett, 599 F.2d 274, 279-81 (8th Cir. 1979)(injured boat passenger collaterally estopped from bringing subsequent negligence claim against operator following fully litigated exoneration and limitation action in which it was determined that operator was not negligent).  Here, the issues of whether Weeks de Puerto Rico supplied the crew to the TREVOR and was Gatewood's employer on August 25, 2005, were never actually litigated and determined by the Puerto Rico District Court.

Third, considering the evidence  - as set forth in Gatewood's affidavit, as well as the one paycheck proffered by defendants -  in favor of Gatewood as the

---

1979).

nonmoving party, the Court concludes at this juncture, that a genuine issue of material fact remains as to whether Weeks Marine and Atlantic Sounding were Gatewood's employer(s) at the time of this maritime accident for purposes of his Jones Act claim.

### C. Count II: Unseaworthiness

The doctrine of seaworthiness under general maritime law is the absolute duty of a shipowner to furnish a vessel reasonably fit for its intended purpose. Shipowners are liable to indemnify seamen for injuries "caused by the unseaworthiness of the vessel or its appurtenant appliances and equipment.'" Seas Shipping Co. v. Sieracki, 328 U.S. 85, 90 (1946); Baker, 656 F.2d at 181.[7]

An unseaworthiness claim for an injured seaman applies *in rem* against the vessel and *in personam* against either the title owner of the vessel, or the owner *pro hac vice* under a demise or "bareboat" charter. McAleer v. Smith, 57 F.3d 109, 112 (1st Cir. 1995); Baker, 656 F.2d at 181-82. "In general, if there is an owner *pro hac vice*, the title owner will be absolved of personal liability (*except* for defective conditions that existed *before* the owner *pro hac vice* took control of the vessel)." McAleer, 57 F.3d at 112 (emphasis added); see also Baker, 656 F.2d at 184 (even valid charter would not have released owner from its liability as owner for the

---

[7] The Jones Act, which provides an action for negligence, does not disturb a seaman's right to bring a general maritime claim for unseaworthiness. Miles v. Apex Marine Corp., 498 U.S. 19, 29 (1990).

11

unseaworthiness of its vessel). The consensus is that the owner of a vessel under a demise charter is liable for unseaworthiness that preexisted the charter. E.g. Huss v. King Co., 338 F.3d 647, 652 (6th Cir. 2003); Torch Inc. v. Alesich, 148 F.3d 424, 427 (5th Cir. 1998); Kerr-McGee Corp. v. Law, 479 F.32 61, 62 (4th Cir. 1973); see generally Lovette v. Happy Hooker II, No. 2:04CV522FTM29SPC, 2006 WL 66722, at \* 3 (M.D. Fla. 2006)(Eleventh Circuit has not resolved whether owner remains liable for unseaworthy condition of the vessel or whether bareboat demise charterer is the liable party absolving the owner from liability).

While the District Court referenced in its default judgment that Weeks de Puerto Rico was "owner," the issue of ownership of the tug TREVOR was not "actually litigated and determined" by the District Court in Puerto Rico. (Doc. 33-2.) See Arizona v. California, 530 U.S. at 414; Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998); Bush, 62 F.3d at 1323. Thus, Gatewood is not collaterally estopped from asserting an unseaworthiness claim against Weeks Marine as alleged owner of the tug TREVOR.

Further, fact issues exist as to whether Weeks de Puerto Rico was indeed an owner *pro hac vice* of the TREVOR pursuant to the May 22, 2005 bareboat charter agreement at the time of Gatewood's injury, or whether Weeks Marine, as title owner of the vessel, is liable for any alleged unseaworthiness.

"To create a demise [bareboat charter] the owner of the vessel must completely

12

and exclusively relinquish 'possession, command, and navigation' thereof to the demisee . . . . It is therefore tantamount to, though just short of, an outright transfer of ownership." Guzman v. Pichirilo, 369 U.S. 698, 699-700 (1962); Complaint of Anheuser-Busch, Inc. For Exoneration From or Limitation of Liability, 742 F. Supp. 1143, 1146 (S.D. Fla. 1990). Under a bareboat charter, full possession and control of the vessel are delivered up to the charterer for a period of time. Reed v. S.S. Yaka, 373 U.S. 410, 412 (1963). Anything short of a relinquishment of total control is considered a voyage or a time charter or no charter at all. Guzman, 369 U.S. at 700; Complaint of Anheuser-Busch, Inc., 742 F. Supp. at 1146. "Under a bareboat or demise charter the vessel is transferred without crew, provisions, fuel or supplies, i.e. 'bareboat'; and when, and if, the charterer operates the vessel he must supply also such essential operating expenses." Walker v. Braus, 995 F.2d 77, 81 (5th Cir. 1993); see also Lovette, 2006 WL 66722, at * 3. An owner's unlimited access to the chartered vessel and ultimate control over the chartered vessel's operation are indicia that a conveyance is not a bareboat or demise charter. See Lovette, 2006 WL 66722, at *4; Birmingham Southeast, LLC v. M/V MERCHANT PATRIOT, 124 F. Supp.2d, 1327, 1338-39 (S.D. Ga. 2000)

Here, while the May 22, 2005 Bareboat Charter agreement pertaining to the TREVOR and several other vessels between Weeks Marine and Weeks de Puerto Rico provides that the "Charterer agrees to hire competent crew to operate and

maintain the Vessels," (Doc. 25-2 ¶ 16), questions of fact remain about whether Weeks de Puerto Rico actually provided the crew.  Further, the agreement required that Weeks de Puerto Rico receive Weeks Marine's prior approval to "use the Vessels for any work other than related to Charterer's Ponce, Puerto Rico Job (the Project)"; that all obligations incurred by Weeks de Puerto under the agreement shall be pursuant to the Project; and that Weeks de Puerto Rico shall keep Weeks Marine advised of the vessels' exact location "at all times" and "permit Owner . . . to inspect the Vessels  at any time."  (Doc. 25-2 ¶ 9.)  These provisions, coupled with the statement by Gatewood that there was no change of crew concurrent with this agreement, all raise questions of fact whether Weeks de Puerto Rico was indeed an owner *pro hac vice* at the relevant time.

Finally, even if Weeks de Puerto Rico were determined to be the *pro hac vice* owner of the TREVOR under a bareboat charter agreement, questions of fact remain as to the TREVOR's seaworthiness at the inception of the charter, which could make Weeks Marine, as title owner, liable to Gatewood on his seaworthiness claim. See Huss, 338 F.3d at 652; Torch, Inc., 148 F.3d at 427; McAleer, 57 F.3d at 112; Baker, 656 F.2d at 184.

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1.     Defendants Atlantic Sounding Co., Inc.'s And Weeks Marine, Inc.'s

Motion For Summary Judgment (Doc. 38) is **DENIED.** However, the Court does not preclude revisiting the issues raised by this motion after development of a more complete record.

2. This case is **SET** for a **TELEPHONE HEARING** on case status on **Thursday, June 21, 2007,** at **10:00 a.m.** Counsel for Plaintiff is directed to initiate the telephone conference call by calling counsel for the Defendants and then calling the Court's polycom telephone line, (904) 549-1949.[8] **The call should be placed to the Court five minutes prior to the scheduled hearing time.**

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of May, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies to:
Counsel of Record

---

[8] To maximize the quality of the audio-connection, counsel are requested not to use cell phones or speaker phones during the hearing.